# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICH DANNU, | : Civil No. 1:20-CV-01491 |
| Petitioner, | : |
| v. | : |
| ICE, *et al.*, | : |
| Respondents. | : Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is an immigration habeas corpus case under 28 U.S.C. § 2241 in which Petitioner Erich Dannu ("Dannu") seeks habeas corpus relief based on the length of his detention and the risks posed by COVID-19. Dannu additionally seeks a stay of his removal from the United States. For the reasons that follow, the court denies the petition for writ of habeas corpus without prejudice to the extent that it is based on the length of Dannu's detention and the risks posed by COVID-19. The court also denies the request to stay Dannu's removal from the United States, as this court does not have the power to grant such relief.

### **BACKGROUND AND PROCEDURAL HISTORY**

Dannu is a native and citizen of Indonesia who legally entered the United States as an exchange visitor on March 2, 2005. (Doc. 9, p. 7.)[1] Dannu's status was changed to legal permanent resident on August 2, 2007. (*Id.*)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

1

On May 23, 2011, Dannu was convicted in the Allegheny County Court of Common Pleas of aggravated assault, possession of a firearm with an altered manufacturer's number, and manufacture, delivery, or possession with intent to manufacture or deliver marijuana. (*Id.* at 8.) He was sentenced to 4–8 years imprisonment. (*Id.*) While Dannu was serving his state sentence at SCI Camp Hill, United States Immigration and Customs Enforcement ("ICE") issued him a notice to appear on October 24, 2011, charging him as removable from the United States pursuant to various sections of the Immigration and Nationality Act. (*Id.*)

On May 7, 2018, an Immigration Judge ("IJ") ordered Dannu to be removed from the United States. (*Id.* at 9.) Dannu was subsequently taken into ICE custody on July 16, 2019, following his release from state custody. (*Id.* at 9.) Dannu appealed the IJ's order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on November 29, 2019. (*Id.*) Dannu filed a petition for review of the BIA's decision with the United States Court of Appeals on February 14, 2020, but the court dismissed his appeal on February 27, 2020. (*Id.*) The government has made several attempts to remove Dannu from the United States since his removal order was finalized. (*Id.* at 10.) To date, however, Dannu has not been removed from the country, and he remains detained in York County Prison.

Dannu filed the petition that initiated this case on August 20, 2020. (Doc. 1.) Dannu seeks habeas relief based on both the duration of his confinement and the risks posed by COVID-19. (*Id.*) He asserts that he is at "very high risk" with respect to COVID-19 because he has "asthma, seizures, high blood pressure, back problems" and because he is allergic to "pollen and dust" which can trigger his asthma. (*Id.* at 7.)

Respondents responded to the petition on October 13, 2020. (Doc. 9.) Dannu then filed supplements to his petition on November 10, 2020, December 28, 2020, and February 23, 2021. (Docs. 11–13.) Dannu's supplements provide relevant information as to both his length of detention and COVID-19 claims. Specifically, Dannu represents in the November 10, 2020 supplement that he tested positive for COVID-19 in September 2020. (Doc. 11.) In the February 23, 2021 supplement, Dannu represents that the government attempted to remove him to Indonesia on January 29, 2021, but that the removal failed because the travel documents that would have allowed Dannu to travel to Indonesia had expired. (Doc. 13.)

Upon receiving Dannu's February 23, 2021 supplement, the court ordered Respondents to file a report on the status of the government's efforts to remove Dannu from the country. (Doc. 14.) Respondents timely responded on March 9,

2021, providing the court-ordered status report as well as a declaration from ICE Deportation Officer Eric Barnett ("Barnett").  (Docs. 15, 15-1.)

According to the Barnett declaration, ICE's efforts to remove Dannu began on August 2, 2019, when a travel document request package was forwarded to the Indonesian Embassy on Dannu's behalf.  (Doc. 15-1, ¶ 8.)  Dannu was then interviewed by a member of the Indonesian Consulate on December 23, 2019, after which the Indonesian government issued travel documents to Dannu that remained valid through January 2021.  (*Id.* ¶¶ 9–10.)  Dannu was scheduled for an escorted removal to Indonesia on March 19, 2020, but the removal had to be postponed due to COVID-19 travel restrictions.  (*Id.* ¶ 12.)  Dannu was then scheduled for an unescorted removal to Indonesia on October 7, 2020, but that removal was canceled after officials realized that it would require an extended unsupervised layover in Japan.  (*Id.* ¶ 13.)

On December 30, 2020, the Indonesian government reported to ICE that a travel ban had been enacted for all non-Indonesian citizens, which prevented ICE from conducting an escorted removal.  (*Id.* ¶ 14.)  Dannu was accordingly scheduled for an unescorted removal to Indonesia on January 27, 2021.  (*Id.* ¶ 15.)  Dannu's flight was scheduled to depart from Newark, New Jersey and fly to Jakarta, Indonesia, with a layover in Narita, Japan.  (*Id.* ¶ 15.)  On January 26, 2021, however, the flight was canceled.  (*Id.*)

Dannu was scheduled for another unescorted removal on January 29, 2021, and was escorted from Philadelphia to Los Angeles, California for that purpose on that date. (*Id.* ¶ 16.) The flight was scheduled on Singapore Airlines from Los Angeles International Airport, but Singapore Airlines did not allow Dannu on to the flight without an ICE escort. (*Id.*) ICE could not comply with this requirement given the Indonesian government's travel restriction. (*Id.*)

On February 4, 2021, ICE forwarded a new travel document request to the Indonesian government on Dannu's behalf. (*Id.* ¶ 17.) New travel documents are expected to be issued soon, with the Indonesian Consulate indicating that they may be issued within a week. (*Id.*) ICE expects to make travel arrangements for Dannu's removal to Indonesia shortly after his new travel documents are issued. (*Id.* ¶¶ 18–19.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## DISCUSSION

### A. Dannu's COVID-19 Claim Is Denied Without Prejudice

The court will first address Dannu's COVID-19 claim, which arises under the Due Process Clause of the Fifth Amendment. A civil immigration detainee is entitled to the same due process protections as a pretrial detainee under the Fifth Amendment. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (citing *E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019)). Habeas corpus cases in which a civil immigration detainee alleges a violation of his Fifth Amendment rights arising from COVID-19 are generally based on two "separate but related theories": first, that the petitioner's risk of exposure to COVID-19 amounts to punishment, and second, that the detention facility's COVID-19 policies amount to deliberate indifference to a serious medical need. *Id.*

Under either theory, a court considering whether a petitioner is entitled to habeas corpus relief based on COVID-19 should consider "(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease; (2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19; (3) whether the petitioner has been directly exposed to COVID-19; (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19; (5) the efforts that the prison has made to prevent or

6

mitigate the harm caused by COVID-19; and (6) any other relevant factors." *Saillant v. Hoover*, 454 F. Supp. 3d 465, 471 (M.D. Pa. 2020). "It is not enough for a petitioner to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners. Rather, the petitioner must make an individualized showing that he is entitled to habeas corpus relief when considering the above factors." *Id.* (citing *Verma v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149, at *5–7 (M.D. Pa. Apr. 9, 2020)).

    The analysis is altered, where, as here, a petitioner has already contracted COVID-19, as the adequacy of the detention facility's prevention efforts is no longer relevant to the court's analysis of whether relief should issue. *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 160–61 (M.D. Pa. 2020). Once a petitioner has contracted COVID-19, the focus of the analysis is whether the detention facility has adequately treated the petitioner's condition. *Castillo-Perez v. Lowe*, No. 1:20-CV-02271, 2021 WL 229611, at *3 (M.D. Pa. Jan. 22, 2021). Thus, if a petitioner who has contracted COVID-19 fails to allege inadequate medical care for his condition, his claim for habeas corpus relief fails. *Id.*; *see also Rojas-Marchan v. Warden of Clinton Cty. Corr. Facility*, No. 3:20-CV-02245, 2021 WL 772724, at *3 (M.D. Pa. Feb. 3, 2021) (finding that petitioner's claim for habeas corpus relief failed because "he has not alleged any symptoms at all that he suffered as a result of contracting COVID-19, nor has he alleged a need for—much

7

less the denial of—any medical care"), *report and recommendation adopted*, No. 3:20-CV-02245, 2021 WL 772242, at *1 (M.D. Pa. Feb. 26, 2021).

In this case, Dannu's COVID-19 claim fails because he has not alleged that York County Prison provided inadequate treatment after he tested positive for the virus. Dannu asserts that he contracted COVID-19 in September 2020, but does not allege that he suffered symptoms from the virus or that he was denied any needed medical care for the virus. Absent such allegations, Dannu is not entitled to habeas corpus relief. *See Castillo-Perez*, 2021 WL 229611, at *3; *Rojas-Marchan*, 2021 WL 772724, at *3. The court will accordingly deny Dannu's petition without prejudice to the extent that it is based on COVID-19.

### B. Dannu's Length of Detention Claim Is Denied Without Prejudice

The court will next address Dannu's argument that he is entitled to a writ of habeas corpus because his detention has become unreasonably prolonged. Because Dannu has been ordered removed from the country and has been detained for more than ninety days pursuant to his removal order, his detention is governed by 8 U.S.C. § 1231(a)(6). Under that statute, a detainee may be detained beyond the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1)(A) if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

Although § 1231(a)(6) does not contain any explicit limit on the amount of time that a detainee may be detained after his final removal order, the Supreme Court has recognized that detention under § 1231(a)(6) may become unlawful when it continues beyond "a period reasonably necessary to secure [the detainee's] removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). In *Zadvydas*, the Court recognized that detention for up to six months after a final removal order is presumptively reasonable. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The Third Circuit has also recognized this presumption, noting that individuals "detained under § 1231(a)(6) are only entitled to a bond hearing after *prolonged* detention," which means that a detainee "is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Guerrero-Sanchez v. Warden York Cty.*, 905 F.3d 208, 225–26 (3d Cir. 2018) (emphasis in original). A court considering whether a detainee's detention has become prolonged should weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

9

>administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 225 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976)).

In this case, Dannu's claim for habeas corpus relief fails because there is a significant likelihood that he will be removed from the country in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. The Barnett declaration shows that ICE has made numerous attempts to remove Dannu from the country, most recently in January 2021, but that those removal efforts have failed due to extraneous factors that were largely out of ICE's control. (*See* Doc. 15-1.) The Barnett declaration also shows that ICE has recently requested new travel documents from the Indonesian government, that it expects to receive those travel documents in the near future—possibly within a week—and that it intends to arrange for Dannu's removal as soon as the travel documents are received. (*Id.* ¶¶ 17–19.) These assertions appear to be credible in light of the extensive efforts that ICE has already made to remove Dannu from the country. Accordingly, there appears to be a significant likelihood of removal in the reasonably foreseeable future, and the court will therefore deny Dannu's length of detention claim without prejudice to Dannu's right to renew the petition if his detention becomes unreasonable in the future. *See Zadvydas*, 533 U.S. at 701 (noting that detainee seeking habeas corpus relief must provide "good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future" in order to establish that his detention has become unreasonably prolonged).

### C. This Court Does Not Have Jurisdiction to Stay Dannu's Removal

Finally, the court will address Dannu's request that the court stay his removal from the United States.  (*See* Doc. 1, p. 7.)  This court does not have jurisdiction to stay Dannu's removal.  *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292, 294 (3d Cir. 2020).  Accordingly, this portion of Dannu's petition is denied without prejudice to his right to pursue relief before the appropriate court of appeals.

### CONCLUSION

For the foregoing reasons, Dannu's petition for writ of habeas corpus is denied without prejudice.  An appropriate order follows.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Court Judge
> Middle District of Pennsylvania

Dated: March 10, 2021